## OTHO T. FOUT ET AL. *vs.* THE COUNTY COMMISSIONERS OF FREDERICK COUNTY.

*Constitutional Law—Title of Statute—Validity of Act of 1904, ch. 225, Relating to the Improvement of Highways.*

The title of the Act of 1904, ch. 225, is, An Act for the improvement of the public highways of the State, and to provide the means therefor, and to require the commission created by the Act of 1896, ch. 51, to perform certain additional duties. The first section of the Act prescribed the conditions under which the commissioners of any county might, on their own motion, petition the State Geological and Eco-

nomic Survey (the commission created by the Act of 1896) for plans and estimates of the cost of constructing or repairing roads in their counties. The second section provided that whenever the owners of two-thirds of the lands binding on any road, a mile or more in length, shall require the County Commissioners to have the same constructed or repaired, stating the willingness of the petitioners to pay ten per cent of the cost of such improvement, it shall be the duty of the commissioners to request the State Geological Survey to furnish plans and estimates of the cost of the construction. By other sections of the Act, that commission is required to furnish such plans and estimates if they deem the proposed road a proper one to be constructed, and elaborate provisions are then made for the doing of the work. The Act appropriated $200,000 annually by which one-half of the cost of making such roads was to be paid by the State. *Held*, that the second section of this Act by which the County Commissioners are required, under certain conditions, to apply to the Geological Survey for the construction of a road, relates to the improvement of highways; that the title of the Act is sufficiently exact, definite and comprehensive to cover this method of improving highways and fully apprises the public of the proposed legislation, and that the Act is consequently not in violation of the Constitution, Art. 3, sec. 29, which provides that the subject of every law shall be described in its title.

By the second section of the Act of 1904, ch. 225, the commissioners of a county are required to repair a public road upon the petition of the owners of two-thirds of the land abutting thereon, who pay ten per cent of the cost, in case the State Geological Commissioners approve of the improvement and direct the method of doing it, and by other sections of the law, the State pays one-half of the cost of such construction. By the fifteenth section of the Act, it is declared that nothing therein contained, shall be taken to alter, abridge or affect the present method of road construction or repair by the several counties at their own expense or otherwise as now authorized by law. *Held*, that there is no conflict between the second and fifteenth sections of the Act, that the object of the Act was to provide for the improvement of certain roads at the joint expense of the State and the counties, and the purpose of the fifteenth section was to provide that the Act should not affect the power of the County Commissioners to construct or repair roads at their own expense under any existing general or local laws.

*Decided April 2nd, 1907.*

Appeal from the Circuit Court for Frederick County (Mc-Sherry, C. J., and Henderson and Motter, JJ.)

The cause was argued before Briscoe, Boyd, Pearce, Schmucker, Burke and Rogers, JJ.

*Glenn H. Worthington, John E. R. Wood* and *John J. Donaldson*, for the appellants.

Do the provisions of the Act which give the people of a community the right to invoke the benefit of the law against the wishes of the County Commissioners by paying one-tenth of the cost of the repair, render this feature of the Act unconstitutional and void by reason, as alleged, that it conflicts with Art. 3, sec. 29, of the Constitution?

The question of the proper construction and application of this clause of the State Constitution has been before the Court not less than 46 times. For ready reference the 46 cases are set out below, beginning with the earliest case on the subject and ending with the latest:

1. *Davis* v. *State*, 7 Md. 151 (1854). Law upheld. Opinion by JUDGE JOHN THOMSON MASON, who says, speaking for the whole Court, as to this question: "A practice had crept into our system of legislation of engrafting upon subjects of great public benefit and importance, *for local or selfish purposes*, foreign and often pernicious matter." "To remedy such and similar evils, was this provision inserted in the Constitution."

2. *Keller* v. *State*, 11 Md. 525 (1857.) Law upheld. An Act licensing the vendors of lager beer manufactured by themselves, was sustained though the title indicated a purpose to increase the rates of license, of *ordinary keepers and traders* only.

3. *Parkinson* v. *State*, 14 Md. 184 (1859). Law upheld. Opinion by JUDGE ECCLESTON, who says: "If the strict interpretation insisted on in the argument should be adopted some portions of many of the Acts which have been passed will be rendered null and void:" "Would embarrass the Legislature in the discharge of its duties and would produce much controversy in regard to the validity of many laws." See also *Cearfoss* v. *State*, 42 Md. 495.

4. *Annapolis* v. *State*, 30 Md. 118 (1869). Law upheld. An Act entitled an Act to amend the charter of Annapolis, was suffidint to sustain an authority in the Act to close a street.

5. *Washington Co.* v. *Franklin R. R. Co.* 34 Md. 159 (1871). Law upheld. The title to general assessment law was sufficiently comprehensive to include a clause in the body of the Act repealing all exemptions.

6. *Cearfoss* v. *State*, 42 Md. 495 (1875). Law upheld. Act whose title seemed to prohibit merely the *sale* of intoxicating liquors on election days, was held also valid as to a prohibition against giving such liquors on election day. Citing 14 Md. 184, *supra.*

7. *McGrath* v. *State*, 46 Md. 631 (1877). Law upheld: See opinion of JUDGE ROBINSON, p. 633.

8. *Straus* v. *Heiss*, 48 Md. 292 (1878). Law upheld. Surplusage in Act rejected.

9. *Co. Com.* v. *Meekins*, 50 Md. 28 (1878). Law upheld. Commissioners refused to approve the bond of a treasurer appointed by the Governor—Court says: "To render a law obnoxious to the clause of the Constitution, Art. 3, sec. 29, there must be engrafted upon a law of a general nature, some subject of a private or local character, or that two or more dissimilar and discordant subjects should be legislated upon in the same law.

10. *Bldg. Assn.* v. *Newman*, 50 Md. 62 (1878). Law upheld. "An Act to amend Art. 95 of the Code of Public General Laws, by adding an additional section thereto."

11. *County Commissioners* v. *County Commissioners*, 50 Md. 245 (1879). Law upheld. The decision in this case related to the erection and maintenance of a bridge over Kent Narrows.

12. *Balto.* v. *Reitz*, 50 Md. 579 (1879). Law upheld. The title of the Act of 1878, ch. 143, indicated a subject concerning the purchase of land for the purpose of a public park. The Court says: "While the title must indicate the *subject* of the Act, it need not give an abstract of its contents, nor need it mention the means and methods by which the general purpose is to be accomplished."

13. *State* v. *Fox*, 51 Md. 412 (1879). Law upheld. Fox was indicted for cutting down timber trees under the Act of

1878, ch. 108, entitled, "An Act to add an additional Article to the Code of Public Local Laws, to be entitled 'Garrett County.'"

14. *Com. Prin. Geo. County* v. *Laurel.* 51 Md. 457 (1879). Upheld.

15. *Com., &c.,* v. *Bladensburg*, 51 Md. 465 (1879). Upheld. Title of Act of 1870, chapter 260, is as follows: "An Act to incorporate the town of 'Laurel in Prince George's County." It provides "that the taxes upon property within the limits of the town shall be turned over to the Commissioners of the town for the improvement of the roads within the corporate limits. Held constitutional.

In the Bladensburg case a similar title was held sufficient, though both laws took money levied by the County Commissioners and collected by them, and gave it to the corporations for the improvement of the roads within the corporate limits.

16. *Mayor, &c., of Balto.* v. *Stoll.* 52 Md. 435. (1879). Upheld. Relating to a free bridge over the Patapsco river.

17. *Agricultural College* v. *Keating*, 58 Md. 580 (1882). Upheld. The Act of 1856, ch. 97, made an annual endowment to the College of $6,000. The general appropriation law of 1880, chs. 431 and 432, appropriated $5,999, to the College for the year 1881 and only $5 for the year 1882. *Held*, titles good though the College was deprived of its annual appropriation for 1882, except as to the sum of $5. The Court cites *Balto.* v. *Reits*, to the effect that "if the several sections of a law refer to and are germane to the same subject matter which is described in the title, it is considered as embracing but a single subject, and as satisfying the constitutional requirement in this respect."

18. *Steiffel* v. *Inst. for Blind*, 61 Md. 144 (1884). Law invalid in part. The title indicated a *repeal* only while the body of the act *repealed* and *re-enacted.*

19. *Slymer* v. *State*, 62 Md. 237 (1884). Law upheld.

20. *State* v. *Norris*, 70 Md. 91 (1889). Law upheld. Title was to add a new section to Article 30 of the code, title

"Crimes and Punishments," sub-title "Rivers," to come after section 171. Indictment for taking and carrying away sand from the bed of the Potomac river. Law valid, *per* JUDGE ALVEY, speaking for the whole Court, who says: "But this Court has ever been reluctant to defeat the will of the Legislature by declaring such legislation void, if by any construction it could possibly be maintained."

21. *Ellicott* v. *Speed*, 72 Md. 22 (1889). In this case Court held that neither the title nor the body of the Act brought corporations within the purview of the insolvency law.

22. *Cathedral* v. *Manning*, 72 Md. 116. (1890). Upheld City of Baltimore given power to open streets through cemeteries. McSHERRY, J., says: "The title, whilst it must indicate the *subject*, need not give an abstract of the contents of the Act, nor need it mention the means and methods by which the general purpose is to be accomplished. There is no foreign, irrelevant or discordant matter incorporated in the statute." See Opinion, page 133.

23. *Calvert County* v. *Hellen* 72 Md. 603 (1890). Upheld. In this case the title was "An Act to create a treasurer for Calvert County, and to provide for the collection of taxes therein." The Act provided that the treasurer should appoint a deputy who should be *Clerk to the County Commissioners*. Art. 25, sec. 1, provides that County Commissioners shall appoint a Clerk to the board, yet no mention was made in the title of the power of the treasurer to appoint the clerk. This case is much more obnoxious to the constitutional objection than the one at bar.

24. *Lankford* v. *Somerset Co.*, 73 Md. 105 (1890). Upheld. Under the Code (1888), Art. 33, sec. 40, the County Commissioners were authorized to appoint Judges of Election. The title of this Article is "Elections." The title of the Act of 1890, ch. 538, is "An Act to repeal and re-enact with amendments sec. 54 of Article 33 of the Code of Public General Laws, title 'Elections,' and to add new sections thereto under the designations of sections" 128 to 166 inclusive.

No mention was made in the title of section 40 or was any indication given therein of the purpose to take the appointing

power of Judges of Election from the County Commissioners and confer it upon the Board of Election Supervisors. Yet the Court, by JUDGE ALVEY, held the whole Act constitutional, although this power of appointment was by the 166th section taken from the commissioners and conferred upon the Election Supervisors, a newly constituted body.

25. *Sharf* v. *Tasker*, 73 Md. 378 (1891). Law invalid in .part. The title of the Act of 1890, ch. 513, had reference to the assessment of unclaimed military lots. The body of the Act forfeited to the State the titles that were not established on or before a certain date, and also provided that access should be had to the land office free. As the title gave no intimation of such changes·of existing law, the Act was declared void in part.

26. *Gans* v. *Carter*, 77 Md. 1 (1893). Law valid. Act of 1890, ch. 263, enabled the Fidelity and Deposit Company to become sole surety on bonds, although the title to the Act indicated a purpose merely to grant additional powers to and to change the name of a private corporation, yet held not in conflict with the general law requiring bond with sureties.

27. *Bond* v. *State*, 78 Md. 523 (1894). Law valid. Concerning sentence to House of Correction.

28. *Drennen* v. *Banks*, 80 Md. 310 (1894). Law valid. The local Code of Cecil County, Art. 8, sec. 107, authorized and empowered the County Commissioners of that county to appoint annually a fit person to act as clerk to the board. By the Act of 1894, ch. 25, the election of a *county treasurer* was provided for, and in the body of the Act it was further provided that the treasurer should be the secretary of the County Commissioners. Thus supplanting the clerk appointed by the commissioners themselves. Section 107 was not mentioned in the title, nor was there any intimation that the law affected the right of the commissioners to appoint their own clerk. Yet the law was sustained.

29. *Whitman* v. *State*, 80 Md. 410 (1895). Law invalid. Title indicated a purpose to *regulate* the liquor traffic in Cambridge, law undertook to *abolish* the liquor traffic not only in Cambridge, but in a larger territory.

30. *Garrison* v. *Hill*, 81 Md. 551 (1895). Law upheld. Title in effect to add an additional section to Code, Article 93 citing 50 Md. 62. Held sufficient.

31. *Hamilton* v. *Carroll*, 82 Md. 334 (1896). Law upheld. Concerning removal of county seat of Charles County.

32. *Mayor* v. *Keeley Institute*, 81 Md. 108 (1895). Law upheld.

33. *State* v. *Schultz*, 83 Md. 58 (1896). Law invalid.· Providing for the payment by every incorporated company of a bonus on its capital stock. Title mentioned *newly* incorporated companies only.

34. *State* v. *Bentzinger*, 83 Md. 481 (1896). Law invalid. Act 1896, ch. 266, entitled an Act to *repeal*, but affirmative legislation was attempted. Distinguished from *Steifel's case* in 61 Md. 144.

35. *Phinney* v. *Shepherd*, 88 Md. 633 (1898). Upheld. Relating to change of name of Shepherd Asylum.

36. *Steenken* v. *State*, 88 Md. 710 (1898). Law void in part. Act 1898, ch. 505, to license stevedores, in body of the act the stevedores were also required to give bond. This part held void.

37. *Stevens* v. *State*, 89 Md. 675 (1899). Law upheld. Protection of birds and game. "While the title must indicate the *subject* of the Act, it need not give an abstract of its contents, nor mention the means and methods by which the general purpose was to be accomplished."

38. *Luman* v. *Hitchens*, 90 Md. 23 (1899). Law void. Title indicated a purpose to forbid sales to employees but body of Act forbade sales to any person.

39. *Mealey* v. *Hagerstown*, 92 Md. 741 (1901). Law upheld. An Act to provide for an electric light plant in Hagerstown.

40. *Balto.* v. *Stewart*, 92 Md. 548 (1901). Law upheld. Construing ordinance under Balto. City charter.

41. *Herbert* v. *Baltimore Co.*, 97 Md. 646 (1903). Law upheld. Relating to compensation of Justices of the Peace in Balto. Co.

42. *Queen Anne* v. *Talbot Co.*, 99 Md. 15 (1904). Law upheld. Relating to Kent Narrows.

43. *Kafka* v. *Wilkinson*, 99 Md. 238 (1904). Sec. 122B held void. The Act contained affirmative legislation not described in the title.

44. *Brown* v. *Md. Telephone Co.*, 101 Md. 574 (1905). Law upheld. Act 1892, ch. 469, gave the Telephone Company the right to use electricity, for lighting purposes.

45. *State* v. *German Savings Bank*, 103 Md. 196 (1906). Invalid. No such section of Code as 86A is mentioned in title.

46. *Balto.* v. *Flack*, 104 Md. 107 (1906). Law upheld. This case related to the paving of certain streets in the annex of Baltimore City.

In only 9 of the 46 cases has the Court declared the law unconstitutional.

The authority of the County Commissioners to control roads and to repair them is purely a delegated authority that may be altered at any time.

The Act of 1904, ch. 225, is entitled "An Act for the improvement of the public highways of the State," &c., thus clearly indicating a purpose to deal with the public roads as the *subject* of the Act, and it would be difficult to deal with the subject of public roads without affecting in some way the powers and duties of the County Commissioners of the several counties in regard thereto.

In *County Comm.* v. *Laurel*, 51 Md. 457, and *County Commissioners* v. *Bladensburg*, 51 Md. 465, the titles of the Acts were merely to incorporate those towns, yet a provision in each directing the County Commissioners to pay over to the towns a part of the taxes collected by the commissioners for public roads, was upheld, so far as this question is concerned.

In *Lankford* v. *Somserset Co.*, 73 Md. 105, the power to appoint Judges of Elections was taken away from the commissioners and placed in the hands of the Supervisors of Elections, though the title of the Act did not indicate any such purpose, nor mention the section of the Article thereby repealed.

The appellants deem the cases of *Calvert County* v. *Hellen*, 72 Md. 603, and *Drennen* v. *Banks*, 80 Md. 310, the two most apposite cases of all the forty-six found in the Reports to the case at bar.

One of the reasons assigned by the Court below for dismissing the appellants' petition for the benefit of the Act of 1904, ch. 225, was that sec. 15 of said Act was in conflict with the preceding sections, and practically nullified the involuntary feature, and consequently that the enforcement of the law was a matter wholly at the option of the commissioners, and the same could not be enforced by *mandamus.*

But such a construction the appellants insist is not only at variance with the well-established rules of construction, but at variance with the very words of the Act itself.

The preceding sections, especially sec. 2 of the Act, made it *"the duty"* of the *County·Commissioners* to proceed to operate under the law whenever the owners of two-thirds of the lands binding on any section of public road, petitioned for the benefit of State aid under the Act and agreed to pay one-tenth the cost of repair.

The commissioners were left no option in the matter when these conditions were complied with, and were only limited by the provision of twenty-five per cent of the road levy (sec. 6), a question that would arise later and does not concern the giving of notice and asking for plans and specifications asked for in the prayer, for a *mandamus* in this case (sec. 7).

So far as this proceeding is concerned, it is contended that the Act is absolutely mandatory.

To say that section 15 nullifies the involuntary or mandatory feature of the Act would ascribe to the Legislature the folly of providing in detail for State aid to road improvement at the request of the citizens of a community, upon their complying with certain conditions, and then deliberately striking down this most important feature by a single sentence in section 15.

No such construction was in the minds of those who framed

the law, or in the minds of the members of the Legislature
that enacted it.    The intention of the Legislature must govern
the construction of all statutes." *State* v. *Archer*, 73 Md. 57.
"The real intent will prevail over the literal sense of the lan-
guage used." *Roland Park* v. *State*, 80 Md. 448.    "It is an
established rule in the exposition of statutes that the intention
of the law givers is to be deduced from a view of the whole
and every part of a statute taken and compared together." 1
*Kent*, 461–2 (6 ed.); *Parkinson* v. *State*, 14 Md. 184–194.
"The intention should be followed though contrary to the
letter of the statute." *Maxwell* v. *Baldwin*, 40 Md. 273–290.
. In the case at bar the intention and purpose of the enact-
ment was to provide both for voluntary action on the part of
the County Commissioners (sec. 1), and for involuntary action
at the request of landowners (sec. 2), and the words of section
15 taken and considered in connection with all the other parts
of the Act show that its only object was to reaffirm the right
of the County Commissioners to repair roads *at their own ex-
pense*, where not in conflict with the manifest purpose and in-
tent of the other provisions of the Act by which the State aid
was obtained.

*Reno. S. Harp* and *Hammond Urner* for the appellees.
The Court below held:
1.  That the involuntary provisions of the Act are unconsti-
tutional and void because not described in the title, as re-
quired by Article 3, Section 29 of the Constitution.
2.  That, independently of the objection just stated, the in-
voluntary provisions in question are inoperative because they
are nullified by a later and repugnant provision embodied in
the same Act, the former provisions constituting a radical in-
terference with the general and long established powers and
methods of County Commissioners in road construction and
repair under the pre-existing law, and the latter provision de-
claring that nothing in the Act contained should affect or im-
pair the present methods of road construction and repair by
the Counties as now authorized by law.

It is apparent, upon comparison of the two systems of road repair mentioned in the Act, that they are radically different and readily separable, and that neither depends upon the other for its completeness or integrity. One simply supplements, without disturbing, the pre-existing jurisdiction of the county authorities in the maintenance and improvement of public highways by providing an auxiliary fund for which they may voluntarily apply. The other wrests from those authorities all control over the expenditure of the county funds entrusted to their care to the extent of one-fourth of the entire road levy, and places that control in the hands of private individuals to be exercised subject to the discretion of an outside commission. The effect of the former system is to provide means and machinery by the aid of which the public highways of the State may be gradually improved consistently with their current maintenance in their entirety, while the logical result of the latter system is to force the counties, upon the application of interested individuals, to concentrate a considerable proportion of their road levies upon work designated arbitrarily and without reference to their judgment, and to largely neglect their matured and legitimate plans for general highway maintenance and improvement.

The title contains not the slightest suggestion of the involuntary provisions of the Act, and no one would suppose for a moment from the phraseology of the title that the effect of the Act was to vitally impair the established jurisdiction and control of County Commissioners over the maintenance, repair and improvement of highways and the administration of the public funds in there custody dedicated to those purposes.

In any case of this character the subject of the proposed legislation must be considered in the concrete and not in the abstract. It is not the improvement of highways generally, but the particular method of improving highways that constitutes the subject of the Act in this case. The title attempts to describe this subject as being for the improvement of the public highways of *the State* and to *provide the means* therefor and to require the performance of additional duties by a designated

Commission.   This unquestionably conveys the idea that a
*general* system of highway improvement is contemplated by
the Act, to be inaugurated by the State, conducted by State
officials and paid for with State funds.   We should never sus-
pect that under this title were provisions authorizing private
citizens to require the improvement of a *single mile* of road,
against the will of the County Commissioners and largely at
the expense of county funds levied for a different purpose.

It is true that both the title and the Act deal with the gen-
eral subject of highway improvement.   But the title does not
content itself with any such general description.   If the title
had simply described the Act as being one "for the improve-
ment of public highways," we should be confronted with a
different question from that with which we actually have to
deal in this case.   Such a title would not have been explicit,
but it would not have been misleading.   It would at least have
suggested the inquiry as to what highways were to be im-
proved, and by whom, and at whose expense.

But here we have an Act, which, after assuring us in its
title that it contemplates the improvement generally of the
public highways of the State, by the officials, and with the
funds, of the State, provides specifically for the construction
or repair of comparatively infinitesimal sections of the public
highways at the instance of abutting owners, and for the pay-
ment of the costs and expenses of such work out of the
county treasuries, to the extent of one-fourth of the total road
levies, in absolute disregard of the general road interests to
which the funds produced by such levies are dedicated.   It
seems to us to be perfectly obvious that these two ideas, em-
bodied respectively in the title and in the involuntary provis-
ions of the Act, are hopelessly inconsistent.

It may be contended that when the Act requires the
County Commissioners of the several counties to apply one-
fourth of their road funds differently from their regular and
intended appropriation, upon the demand of private individuals,
there is a "providing of means" for highway improvement
within the purview of the title.   But we apprehend that if the

title had been merely: "An Act to *provide means* for the improvement of the public highways of the State," it would be unhesitatingly held to be an insufficient description of the subject of an Act which proposes to provide the desired means by withdrawing from the hands and control of the County Commissioners certain funds which they had already raised and appropriated by authority of law for totally distinct objects.

Upon grounds which seem to us to be less conclusive than those here presented Acts of Assembly have been held invalid, as a whole or in part, for defects of title, in the following cases: *Stiefel* v. *The Maryland Institute*, 61 Md. 144; *State* v. *Benzinger*, 83 Md. 481; *Whitman* v. *State*, 80 Md. 410; *Scharf* v. *Tasker*, 73 Md. 378; *State* v. *Schultze Co.*, 83 Md. 58; *Luman* v. *Hitchins*, 90 Md. 14; *Ellicott Machine Co.* v. *Speed*, 72 Md. 25; *Steenken* v. *State*, 88 Md. 710; *Kafka* v. *Wilkinson*, 99 Md. 238; *State* v. *German Savings Bank*, 103 Md. 200.

An examination of the numerous cases in which the titles of statutes are considered under Article 3, section 29 of the Constitution will discover a broad distinction between Acts containing provisions which would have the effect of repealing existing laws, and those containing provisions which, while not strictly within the descriptions of the titles, do not interfere with other statutes.

There can be no serious dispute but that the involuntary clauses of the Act alter, abridge and affect the method of road construction by the counties as previously authorized by law. They have the effect of repealing by implication *pro tanto* the provisions of the Code of Public General Laws under which that method has been established and applied. *Smith* v. *School Commissioners*, 81 Md. 516; *Tax Cases*, 50 Md. 296.

By the general law the county authorities of Frederick County are required to apply the whole road levy to the maintenance and improvement of the entire twelve hundred miles of public roads in the county. By the Act of 1904 they may be compelled to concentrate one-fourth of that amount upon

the improvement of a mile or two of road and, consequently, to either economize as to all the remainder of the highways of the county or to meet the deficiency by increased taxation. Under the Code the County Commissioners may grade, construct, repair and perfect any part or section of public road in the county according to their own judgment and discretion, exercised with general and intelligent knowledge of the requirements of the public convenience in their respective communities.

Under the Shoemaker Act the owners of two-thirds of the lands binding upon any section of public road not less than one mile long, can, with the approval of the State Geological and Economic Survey Commission, deny to the county authorities the right to determine how, when, by whom and at what cost that particular section of road shall be repaired or improved. Independently of this Act the County Commissioners can alter or close any public road if, in their judgment, such action shall subserve the public convenience. But this right could not be exercised as to any portion of roadway improved under the compulsory provisions of the Act of 1904.

The prior involuntary provisions of the Act, embodied mainly in section 2, declare in effect that the present method of road construction shall be altered and abridged as to the sections of roads therein contemplated, while the subsequent provision declares, with equal, or greater, emphasis, that the Act shall have no such effect. The former section repeals by *implication* the provisions of the general law establishing the "present method" of road construction and repair. The latter *expressly* repeals everything in the Act which might tend to affect the "present method." One asserts and the other denies the right to interfere with the existing road administration of the counties. One enacts a new method of road construction at variance with the "present method," and the other repeals that enactment with promptness and decision.

These two declarations of the legislative intent are radically and fatally repugnant. Both cannot possibly be effective. One must necessarily be inoperative. In this conflict of en-

actments it is the later expression of the legislative will that prevails.   Where "two Acts are plainly repugnant to each other in any of their provisions, the latter Act, without any repealing clause, will operate to the extent of the repugnancy, as a repeal of the first.   This also applies to different sections of the same law."  *Smith v. School Commissioners*, 81 Md. 516; *Harrington* v. *Rochester*, 10 Wend. 553; *State* v. *Shelby County*, 36 Ohio St. 326; *Packer* v. *Sunbury, &c., R. R. Co.*, 19 Pa. St. 211.

BURKE, J., delivered the opinion of the Court.

The appellants, on the 22nd day of December, 1906, filed a petition in the Circuit Court for Frederick County praying that the writ of *mandamus* be issued against William H. Hogarth, Lewis H. Bowlus, Lincoln G. Dinterman, H. Milton Kefauver, and Daniel G. Zentz, the County Commissioners of that County, commanding them, as such commissioners, to give the notice to the Chief Engineer of the Geological and Economic Commission and make the request of said commission, as required by sec. 2 of the Act of 1904, ch. 225, of the General Assembly of Maryland, for plans and estimate of the cost of the proper performance of the work required, according to said plans and specifications, for the construction and repair of a section of public road described in a petition filed with said County Commissioners on the 5th day of November, 1906.

It appears from an examination of the petition, which was filed with the commissioners, and which was also filed as an exhibit in this case, that the appellants were proceeding under sec. 2 of the Act of 1904, ch. 225, to have a section of public road located in Frederick County, constructed and repaired under the provisions of that Act.   It was not denied at the argument that the appellants would be entitled to the writ, if, at the hearing, the facts alleged by them in the petition for the writ were satisfactorily established by the proof; provided sec. 2 of the statute to which we have referred is valid and operative.   This could not well be denied since the Act declares it

to be the imperative duty of the commissioners to make the request directed by that section of the statute when the requirements thereof have been fully complied with.

All the neeessary and essential jurisdictional averments, upon which under the terms of the Act the relief prayed for depends, are set out in the petition of December 22nd, 1906, which show a strict compliance with all the requirements necessary to be observed when action is taken under the second section of the Act. An answer was filed by the Commissioners of Frederick County to the petition which contained a traverse of many of the essential facts alleged in the petition, but with these issues of fact we are not concerned. The answer avers (*a*) that the Act of 1904, ch. 225, is unconstitutional and void; (*b*) That so much of said Act as provides for involuntary action by the commissioners for the construction and repair of public roads is unconstitutional and void; (*c*) That the Court was without jurisdiction in the premises. By appropriate pleading the legal questions raised by the answer were presented to the Court for its determination, and on the 10th day of January, 1907, the Court passed an order dismissing the petition for the writ of *mandamus*, and from that order this appeal was taken.

Two grounds are relied upon by the appellees to sustain the order of the lower Court, first, the unconstitutionality of the second section of the Act of 1904, ch. 225; and secondly, because, it is contended, the provisions of that section are inoperative, being nullified by later and repugnant provisions of the same Act. This repugnancy, it is asserted, is found to exist between the second and fifteenth sections of the Act, and is claimed to be of such a character the section 15 must be held to have nullified and rendered inoperative the provisions of section 2.

There are certain general considerations which must not be overlooked by the Court when it is asked to strike down a legislative Act. They have been stated by the Courts in a multitude of cases, but no where have they been stated with greater clearness and accuracy than by Mr. Cooley in his

work on Constitutional Limitations in which it is said: "It must be evident to anyone that the power to declare a legislative enactment void is one which the Judge, conscious of the fallibility of human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility.   The legislative and judicial are co-ordinate departments of the government, of equal dignity.   Each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of power which, by the Constitution, is not conferred upon it.   The Constitution apportions the powers of government, but it does not make anyone of the three departments subordinate to the other, when exercising the trust committed to it.   The Court may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative.   Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it.   But the Courts sit, not to review or revise the legislative action, but to enforce the legislative will; and it is only where they find that the Legislature . has failed to keep within the constitutional limits that they are at liberty to disregard its action; and in doing so, they only do what every private citizen may do in respect to the mandates of the Courts when the Judges assume to act and to render judgments or decrees without jurisdiction." *Cooley's Con. Lim.*, 3 ed. 175.

The Court cannot declare an Act of the General Assembly to be unconstitutional, because it is unwise, or inexpedient, or because it displaces or supersedes wiser and better laws regulating the same subject.   These matters are committed to the judgment of the law making power, and its action in respect to them is not reviewable by the Court.   If therefore it be true, as contended by the appellees, that the second section of

the Act of 1904, chapter 225, be an unwise provision, and would operate harshly upon the people of Frederick county, this Court cannot upon that ground set it aside, but resort must be had for redress to the General Assembly for its repeal or modification. Every presumption favors the validity of the statute; it cannot be stricken down as void unless it plainly contravenes some provision of the Constitution; a reasonable doubt as to its constitutionality is sufficient to sustain it; the party assailing the Act must point out the special provision of the Constitution to which it is obnoxious.

The specific objection to the second section of the Act under consideration is that it violates section 29 of article 3 of the Constitution. That section provides: "That every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." It may be assumed as settled that the purpose of this provision is; "First, to prevent *Hodge Podge*, or "log rolling" legislation; *second*, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles give no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third* to fairly apprise the people, through such publication of legislative proceedings as is usually made, of subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." *Cooley's Constitutional Limitations, 3rd Edition 158.*

The general disposition of the Courts has been to give a liberal construction to this provision of the Constitution, rather than to embarrass legislation by a construction whose strictness is unnecessary to render effective the purposes for which it was adopted. It is stated by JUDGE COOLEY that the general purpose of this provision of the Constitution is accomplished when the law has but one general object, which is fairly indicated in its title; and that to require every end and means necessary or convenient for the accomplishment of this general object to be provided for, by a separate Act relating to that alone, would be not only unreasonable, but would ren-

der legislation impossible. This Court has had occasion to pass so frequently upon this provision of the Constitution that its purpose and meaning may be assumed to be well understood and thoroughly well settled. The difficulty in this, as in other cases, is found to exist in the application of the settled rule to the particular case. There must be unity in the subject matter of the Act, but "if the several sections of the law refer to and are germane to the same subject matter, which is described in its title, it is considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect." *Mayor, &c.* v. *Reitz*, 50 Md. 579. The title is sufficient if it fairly *indicates* the subject matter of the enactment. These rules of construction have been stated and applied by this Court in every case in which it has been called upon to consider this section of the Constitution, from the case of *Davis* v. *The State*, 7 Md. 151, decided in 1854, in which the question was before the Court for the first time, to the case of *Mayor, &c.* v. *Flack, et al.*, 104 Md. 107, decided October 4, 1906, and in all of the cases it is held that the title need not contain an abstract of the Act; nor mention the means or methods by which it is to be carried into effect; nor will an Act of a general nature be declared obnoxious to this clause of the Constitution, unless there be engrafted upon it some subject of a private, or a local character, or unless two or more dissimilar and discordant subjects be legislated upon in the same law. If foreign, irrelevant, or discordant subjects are introduced they will be rejected, if other sections of the law can stand without them.

We will now examine the Act of 1904, chapter 225 to see if in its title, or in any of its provisions it violates any of these rules of construction by which its constitutionality is to be tested. It is a general public law. Its title is: "An Act for the improvement of the public highways of the State, and to provide the means therefor and to require the commission created by an Act of the General Assembly of 1896, chapter 51 to perform certain additional duties." The Commission created by the Act of 1896, chapter 51, upon which additional

duties are imposed, is the State Geological and Economic Survey, which is placed by law under the direction of the Governor, the Comptroller, the President of the John Hopkins University, and the President of the Maryland Agricultural College.

The Act we are called upon to consider contains eighteen sections. The first section provides the conditions under which the Board of County Commissioners of any county in the State may of their own volition petition the commission for plans and estimate of costs for the construction and improvement of roads in their respective counties. This is the voluntary feature of the law, and its validity is not questioned; the second section, which is called the involuntary feature, and which is directly assailed as void, is here transcribed.

Sec. 2. "And be it enacted, That whenever the owners of two-thirds of the lands binding upon any public road or section of road, not less than one mile long, shall present a petition to the County Commissioners of the county where such road, or section of road, may be situated, stating in said petition the desire of said petitioners to have said road, or section thereof, constructed or repaired under the provisions of this Act, and stating further the willingness of said petitioners to pay for such construction or repairs, a sum equal to ten per centum of the cost of such construction or repairs; it shall be the duty of said Board of County Commissioners to make such a request to the commission delegated by this Act, as set forth in section one hereof, upon the payment by said petitioners of said ten per centum, or the giving by them of an approved bond to the County Commissioners for the payment thereof at any time it may be demanded by said County Commissioners upon the filing of a similar petition, and the taking of similar proceedings regarding the extension of any road, which in the opinion of said commission, has been properly improved, a similar request shall be made to the aforesaid commission by the Board of County Commissioners in the county where such extension lies, even though such proposed extension be less than a mile in length."

Section 3 provides that if the commission after the receipt of the notice from the Board of County Commissioners, as provided in section 1, and section 2 of the Act, and after due examination, shall be of opinion that the proposed construction, or repair of roads mentioned in such notice would be generally promotive of the objects therein contemplated, and that such road or proposed road is a right and proper one to be built, and if there shall be sufficient money from the State appropriation to the credit of the county for the necessary outlay, it shall make the plans and specifications for the proposed work, and shall furnish an estimate in detail of the cost of doing the work.

Section 4 relates to the character of material of which the road must be constructed or repaired; section 5 to the payment by the county of the cost of surveys, mapping, printing, &c., proper to be done in the preparation of the plans and specifications and estimate of cost; section 6 to the advertisement for bids for doing the work, but it is expressly provided that the County Commissioners will not be required to advertise for work to be done under the provisions of section 2 of the Act to an amount greater than twenty-five per cent of the road levy of the county; section 7 to the opening of bids and the awarding of the contract; sections 8 and 9 relate to the approval of the contract by the commission and its supervision over the work; section 10 relates to the completion of the work and the payment by the Comptroller to the county of one-half of the total cost of the work; section 11 provides that the State shall not be liable for the cost of acquiring land for any roads, nor for damage caused by the construction or improvement of any road; section 12 provides for the apportionment among the counties of the sum appropriated by the Act; section 13 makes minute provision for the maintenance of the roads constructed under the Act; section 14 makes provision for any county in which the control of the public roads is, or may be vested in any body other than the Board of County Commissioners.

Section 15, which is said to be repugnant to section 2, is as

follows: "That nothing in this Act shall be taken to alter, abridge, or in any way affect the present method of road construction or repair by the several counties, *at their own expense or otherwise*, as now authorized by law."

By section 16 the sum of two hundred thousand dollars annually, or so much thereof as might be necessary is appropriated, out of any money in the Treasury not otherwise appropriated, for the purpose of carrying out the provisions of the Act. Section 17 declares that the provisions of the Act shall be regarded as adding, to such an extent as may be necessary, to enable it to perform the additional duties hereinbefore imposed upon it, to the powers and duties conferred upon said commission by the Act of 1898, chapter 454; section 18 provided that the Act should go into effect January 1st, 1905.

From this examination of the several sections of the Act, which has become to be known as the Shoemaker Road Law, because of the interest taken by Mr. Samuel M. Shoemaker, of Baltimore County, to secure its adoption and retention on the statute books, it is manifest that the sole purpose or object of the Act is the building of good roads in all parts of the State, and as a means to that end to permit the State, under carefully provided safeguards designed to secure the best possible results, to contribute annually for that purpose the sum of two hundred thousand dollars. Most careful and well considered provisions are made to exclude favoritism, jobbery, and dishonesty, and to insure the application of business principles to the work to be done under the law.

The Act is exactly what its title declares it to be—an Act for the improvement of the public highways in the State. All its provisions relate to and are inseparably connected with that subject, and with none other. There is no foreign, irrelevant, or dissimilar subject introduced, and it may well be declared to embrace but one subject. Its title, we think is sufficiently exact, definite, and comprehensive to cover the subject of the Act, and to sufficiently apprize the Legislature and the people of the proposed legislation. Sections 1 and 2 of the

Act merely prescribe the methods or conditions under which request may be made to the commission for plans and specifications and estimate of the cost. These methods and provisions are not required to be set out in the title of the Act.

The County Commissioners have no just grounds of complaint because the Legislature imposes upon them the duty, under the provisions specified in the Act, to make the request for plans, specifications, &c., as directed, since they have no powers or duties except such as may be prescribed by law, and if the General Assembly, which invested them with authority over the county roads, sees fit to withdraw or modify that authority, or imposes new and additional duties upon them with respect to the public highways, they cannot be heard to complain. It is their duty to obey the mandate of the law. The Legislature did not intend to make the operation of the Act dependent solely upon the will of the Boards of County Commissioners. If through shortsightedness or antipathy to the law on the part of said boards they will not avail themselves, when they ought to do so, of the co-operation of the State in the improving of the public roads, the Act makes provision by which the taxpayers may coerce them to action. It has likewise provided checks and restraints for the protection of the county against unwise, unnecessary, wasteful, or improvident expenditure of public money under the involuntary feature of the law. It by no means follows that the road petitioned for under the compulsory provision of the Act must be constructed or repaired. The State Commission is charged with the duty of making due examination into the facts, and it must be satisfied that the proposed construction, or the repair of the roads would be generally promotive of the purposes contemplated by the Act, and that the proposed road is a right and proper one under the circumstances to be built. The personnel of the tribunal to which the State has committed the decision of these matters would seem to afford a guarantee against apprehended abuses. All proper objections by the County Commissioners, or others interested would be heard by it, as to the propriety of building, or repairing the

roads, and it is safe to assume that it would take no action which would result in injury to the general taxpayers of the county.

We cannot adopt the construction of this Act, insisted upon by the appellees, which finds an irreconcilable conflict between sections 2 and 15. That construction would frustrate the evident intent of the Legislature as gathered not only from the purposes of the enactment, but from the plain words employed. This Act, as we have said, was passed for the improvement of the public roads of the State at the *joint expense* of the State and county, and it was not intended to affect the construction and repair of roads by the County Commissioners under the general laws upon the subject found in the Code, or under local laws prevailing in the several counties. In order that this might be placed beyond doubt, or question, the Legislature embodied in the fifteenth section *an express* declaration that the Act must not be taken to alter, abridge or in any way affect the present method of road construction, or repair by the respective counties, *at their own expense, or otherwise* as now authorized by law. This declared purpose of the General Assembly which would seem to be evident without such declaration, harmonizes all the sections of the Act, and preserves in full force and effect the second section which we have been asked to declare void.

For the reasons stated, we decide that section 2 of the Act of 1904, chapter 225, is free from constitutional objection, and that there is no conflict or repugnancy between that section and the provisions of the 15th section, and that, assuming the allegations of fact contained in the petition for the writ of *mandamus* to be true, it was the simple, definite, and imperative duty of the respondents to give the notice and make the request provided for in the second section of that Act.

It follows that the order of the lower Court appealed against must be reversed, and the cause remanded for further proceedings.

*Order reversed and cause remanded,*
*with costs to the appellants.*