JOHN F. DEGNER, and others *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Sale under Attachment—Taxes—Priority of Payment.*

Under section 64 of Article 81 of the Code, which provides that, "whenever a sale of either real or personal property shall be made by any ministerial officer under judicial process or otherwise, all sums due and in arrear for taxes from the party whose property is sold, shall be first paid and satisfied," the city as well as the State taxes on property seized under an attachment on original process, and sold by order of Court, are entitled to priority of payment out of the proceeds of sale.

Where a portion of a stock of goods has been seized under an attachment proceeding, and sold by order of Court, and the City of Baltimore intervenes claiming payment of taxes out of the proceeds of sale, it is no defence to such claim that such taxes ought to be paid out of the proceeds of sale of the residue of said stock of goods taken under a subsequent attachment issued out of a different Court, in favor of other creditors, as the Court in which the claim is made cannot adjudge payment out of the fund in the other Court, having no control over the same.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*M. R. Waller,* for the appellants.

*Albert Ritchie, City Counsellor,* (with whom was *William A. Hammond, City Solicitor,* on the brief) for the appellee.

Degner, *et al. vs.* Mayor, &c. of Baltimore.

IRVING, J., delivered the opinion of the Court.

On the first day of December, 1887, an attachment was issued, at the suit of the appellants in the Superior Court of Baltimore City, on original process. Under it, on the same day, the sheriff took into his possession a part of the defendant's stock in trade. This property being perishable, by order of the Court it was sold on the 10th of February, 1888, and the net proceeds amounting to $3262.56 were deposited in Court to the credit of the suit and subject to the further order of the Court.

A judgment in the short note case was obtained against the defendant on the 14th of January, 1888 for $3029.30, but the record shows no judgment of condemnation in the attachment, and we are informed it is still pending.

On the third day of December, 1887, Hoeninghaus and Curtiss procured an attachment on original process from the City Court against the same defendant, Solomon Brown, which the sheriff levied on other goods of the defendant not taken in the former proceeding. These goods also, under order of Court passed the 9th of April, 1888, was sold and the net proceeds viz., $1746.49 were deposited in the City Court subject to the order of the Court in that suit. This attachment also is still pending and undecided.

On the 13th of March, 1888, the appellee filed a petition in this case, (viz., *John F. Degner, et al. vs. Solomon Brown,*) setting forth that taxes for State and city for 1886 to the amount of $345.64, and for 1887, of $387.89 upon the property attached had not been paid, and praying for an order directing payment thereof from the proceeds of sale of the goods seized in the attachment case and sold by order of Court.

The Court thought the taxes should be paid proportionately from the two funds arising from the two sales in the attachment cases, and *directed* the sum of $426.08 to be paid by the clerk to the City Collector from the

fund in this appellants' attachment suit, as its propor-
tion of the taxes, and from that order this appeal was
taken.

It was admitted that the taxes were correctly levied,
and that the bills therefor were correct, but the appellants
contend that the taxes cannot be taken from any of these
proceeds of sale; and especially that no part of them can
be taken from the fund deposited to the credit of this
appellants' suit.

The appellee claims the taxes by virtue of section 64,
of Art. 81 of the Code of 1888, which section the appel-
lants contend does not apply to nor control this case for
various reasons which we will proceed to consider.

Section 47, of Article 81 of the Code (1888,) provides
that "all State and county or municipal taxes shall be
liens on the real estate of the party indebted from the
time the same are levied." This section does not make
taxes a lien on personal property. The lien provided for
is confined to real estate. Because of this exclusion of
personal property from the incumbrance of a *lien, èo
nomine,* it is argued most ably and strenuously that
before personal property can be subjected to the pay-
ment of the taxes levied upon it, distraint thereon must
have been actually made in accordance with the provi-
sions of the statute directing the proceedings of the tax
collector in respect to the seizure and sale of both real
and personal estate; and inasmuch as the personal prop-
erty in this case had never been actually distrained by
the City Collector, it is claimed that neither State nor
municipal taxes can be taken from the proceeds of its
sale by the order of the Court.

This argument would be unanswerable were it not
for the provisions of section 64, of Art. 81 of the Code,
which says, "Whenever a sale of either real or personal
property shall be made by any ministerial officer under
judicial process or otherwise, all sums. due and in arrear

for taxes from the party whose property is sold shall be first paid and satisfied; and the officer or person selling shall pay the same to the collector of the county or city if any, or to the treasurer, if there be no collector." This is a provision establishing priority of payment from the proceeds of sale of personal property made by judicial authority. It is true the right of prior payment is not *technically* a lien. There is an obvious distinction. A lien is said to be a qualified right, which in a given case may be exercised over the property of another. *Lickbarrow vs. Mason,* 6 *East,* 20. *Priority* of payment is a preference in the appropriation of the proceeds of a debtor's property. As it puts the taxes ahead of other claims it is near of kin to a lien, and may be called a *quasi* lien. This statute provides that in all cases where an officer of the law by judicial authority takes charge of the personal property of a debtor or person, and sells the same, *all* taxes due on the property shall be first paid by him. It in effect makes such judicial officer the collector of the taxes in that condition of things without the intervention of proceedings by distraint. This payment is to be made of such taxes irrespective of the question whether *actual lien* has been *acquired* by distress or not.

Although no distress has been made the taxes are to be paid. In this way the State protects itself and municipalities from the loss which would result by the prevention of distress through the sale of the property. That all taxes in arrear at the time of a sale must be paid by the judicial officer making it, has been repeatedly decided by this Court. *Fulton, et al. vs. Nicholson, et al.,* 7 *Md.,* 107; *Gould, Trustee vs. Mayor, &c. of Baltimore,* 58 *Md.,* 52; *Hebb vs. Moore,* 66 *Md.,* 171.

Counsel for the appellants argues that, if this section 64 does authorize the payment of taxes from the proceeds of sale, only State taxes are designed by the statute to be so paid. He bases his contention on the fact, that

the original Act of 1843 deals exclusively with State taxes, and that section 7, of the Act of 1843, ch. 208, has been codified as section 64, of Art. 81 of the Code. It may be conceded as true, that the Act of 1843, was dealing exclusively with State taxes. There was trouble in the State and a threatening of repudiation in certain parts of it. To meet the possibility of no collector of taxes being bonded in some disaffected section, it was provided that in such case where the State had no agent the person selling should pay the taxes directly to the Treasurer. The State Treasurer was undoubtedly the person meant by that term in that law; but the argument derived from that fact, by counsel, that none but State taxes can *now* be regarded as intended by that section sixty-four cannot be accepted as sound. The word "treasurer" in the Act of 1843, section seven, without doubt did mean the State Treasurer; but since that time new systems have been adopted in the counties, and many of them have treasurers to whom that language now can also apply. In 1860, the Code was adopted, and reduced into one system and Article the whole subject of taxation, and all the provisions respecting the taxes and their method of collection; and the same section seven of the Act of 1843, ch. 208, is reproduced without change as section 71, of Art. 81 of the Code. In that Code, section six of the Act of 1843, ch. 208, is also reproduced as section (47) forty-seven, and still declared no taxes liens, but *State* taxes.

In 1872, the Legislature passed a joint resolution requesting the then Comptroller to revise the revenue laws, which he did, and after his report to the Legislature in 1874, the whole Article 81, of the Code of 1860 was repealed, and a new Article, revised and amended, was adopted by chapter 483, of the Acts of 1874. In that Act and Article, section 47, of the Code of 1860, (which was section 6, of the Act of 1843, ch. 208,) was

changed so as to make all county and municipal taxes liens on all real estate as well as State taxes, which alone were made such by the former provisions. That section and section sixty-four are both in the Code of 1888, unchanged. When section sixty-four says *all taxes* shall be paid by the person or officer selling under judicial process, it must mean all taxes previously spoken of in the Act. They must be construed as a whole. It does not say all State taxes, and certainly the officer who is directed to pay would not be warranted in paying only *State* taxes, when the section told him to pay *all* taxes; and if the Legislature could have intended to have a different meaning obtain, it would have said so, and not left any doubt on the subject. No ministerial officer would dream of its meaning only State taxes when it says *all taxes*.

To decide otherwise would be making a judicial amendment of the section so as to give it a restricted meaning, without any justifying reason therefor. No greater reason certainly exists for collecting the State taxes in that way, than for collecting county and city taxes in the same way. This question or distinction is presented now for the first time. Several decisions have been made where *all taxes* have been held to be included and have been ordered paid. In *Hebb vs. Moore*, 66 *Md.*, 67, that was done; and in *Gould, Trustee vs. Mayor, &c. of Baltimore*, 58 *Md.*, 52, paving taxes assessed by the city were held to be included, and to be paid under the provisions of section sixty-four.

It is further contended that section sixty-four and its provisions do not apply to a case of attachment and the proceedings on it; and especial reliance is placed on the case of *Thomson vs. The Baltimore and Susquehanna Steam Co.*, 33 *Md.*, 316. That was the case of a suit against the sheriff for not paying the arrears of rent from the proceeds of goods taken and sold under the attachment.

The Court did, in that case, hold that the sheriff was not answerable, because the sheriff had no power to sell the property he seized, and he could not in the attachment case levy as well for the rent as for the debt. His writ restricted him to taking property to cover debt, interest and costs; and, therefore, no means are provided by which the provisions of the Statute of 8 Anne, ch. 14, could be properly executed by the sheriff in seizing under an attachment; and the plaintiff would be "deprived of the means provided for reimbursing him the money paid to the landlord." But the Court in that very case says the landlord is not without his remedy. The goods, having been seized, are in the custody of the law, and cannot be distrained, and as the seizure and condemnation under the attachment may deprive the landlord of his remedy by distress, if there be not sufficient goods left to satisfy his demand, "he should be allowed to come in and claim" for his rent which could be distrained for, or he could legally have demanded if the goods had been taken on execution. "Such demand," the Court adds "will take precedence of the debt or claim for which the attachment issued, and, out of the proceeds of the property condemned will be entitled to be first paid." This case seems to us to establish the right of the State and municipality, in a case like the one we are considering, to have their taxes paid rather than contrarywise. In the landlord's case there is difficulty of adopting the provisions of Statute of Anne to an attachment case, for the rent is to be first paid *before the goods are removed* from the premises. That for reasons already suggested by the Court in *Thomson's Case*, could not be reasonably required of the sheriff; but the sixty-fourth section of Art. 81 interposes no such obstacle. It provides for the payment of the taxes only in case of a sale under judicial process, and *after such sale*, and from the proceeds thereof. Here the attached property has been sold by an *officer* under

*judicial order*, and he has deposited the money in Court. If judgment of condemnation had been entered, and the sale had been made by the sheriff under *fi. fa.*, the case would have fallen strictly within the letter of the law. The seizure of the goods by the sheriff under his warrant deprived the tax collector of the right to enforce payment of the taxes by distraint on those goods. Being converted into money it takes the place of the goods, and if no judgment of condemnation should go, the money would be restored to the debtor or whoever represented his rights; and of course, the State and city ought not in that way to lose the opportunity of making their taxes. Although they have no actual lien on the goods they have a *priority of payment*, by the statute, in the proceeds, which is a *quasi* lien on the fund, and the Court was clearly right in adjudging payment; but whether what the Court did order was strictly right, is still a question for consideration.

The Court thought, as there were two funds arising from two attachments against the debtor, that they should proportionately bear the burden of the taxes. Accordingly the Court only ordered from the fund under its control the payment of part of the taxes. The appellants contend that the second attachment fund should pay all the taxes, inasmuch as when their attachment was levied, enough goods remained to pay all the taxes. Whereas the appellee insists that this fund should bear all, and that these appellants should then be subrogated to the city's and State's rights as against the other fund. The city's claim was made in this case in the Superior Court, and was responded to there by the appellants setting up that there were enough goods left behind to pay the taxes. But before such claim made, indeed, on the third day after the levy of appellants' attachment, a second attachment in favor of other creditors issued from the *City Court* under which the remaining goods were taken,

and which were sold subsequently to the filing of the city's claim in this case. If all the goods had been seized under the first attachment, all the taxes would certainly be paid from their proceeds. The Superior Court had control only of the fund in that Court, and that fund, therefore, if liable for any part, was liable for all the taxes, for he could pass no binding order on the fund in another Court. The goods which were taken under the attachment in this case were certainly liable to seizure by the collector for the taxes, and the city should not be required to look to any other fund for its payment. The Court surely could not properly dismiss the city's petition; and it is equally clear it could not adjudicate a priority of payment from a fund over which it had no control. We are told at bar that a like petition was filed by the city, in the City Court, against the fund in that Court; but that does not alter the question for determination. It does seem inequitable that the first attaching creditor should have to pay from the goods taken by him, with superior diligence, to the exclusion of a subsequent one from any liability. But that question we cannot decide now. If, in *point of fact,* the second fund should pay it all, the appellants would be subrogated to the city's rights as against it. In the first place, certainly, under the law, and the situation of this case, the order should have directed all the taxes to be paid from this fund, leaving these appellants to any rights they might have by subrogation. But as the order actually passed is one of which the appellants cannot complain, and the city is not here appealing, the order cannot be properly reversed.

One point made by appellants' counsel remains to be considered. He contends that as the taxes of 1887, were not in arrear, when the attachment issued and the goods were taken by the sheriff, they cannot be allowed. The goods were still in existence and subject to the taxes,

and they were actually in arrear when the sale was made; they were therefore properly chargeable against the fund.

(Decided 25th March, 1891.)