MAYOR AND CITY COUNCIL OF BALTIMORE ET AL. *v.* THEODORE M. PERRIN

SAME *v.* TALBOTT MOTOR COMPANY, INC.

SAME *v.* JAMES REDMOND ET AL.

W. LEE ELGIN, COMMISSIONER OF MOTOR VEHICLES *v.* MAYOR AND CITY COUNCIL OF BALTIMORE

[Nos. 34-37, April Term, 1940.]

*Decided April 4th, 1940.*

The causes were argued, as of the January Term, before BOND, C. J., OFFUTT, PARKE, MITCHELL, and DELAPLAINE, JJ.

*Charles C. G. Evans, City Solicitor* and *Lawrence B. Fenneman, Deputy City Solicitor,* with whom was *Michael J. Hankin, Assistant City Solicitor,* on the brief, for the Mayor and City Council of Baltimore and Thomas G. Young, City Collector.

*William L. Marbury, Jr.,* with whom were *Joseph Sherbow, William L. Rawls,* and *G. Van Velsor Wolf,* on the brief, for Theodore M. Perrin, Talbott Motor Company, and James and Theresa Redman.

*William L. Henderson, Deputy Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the Commissioner of Motor Vehicles.

BOND, C. J., delivered the opinion of the Court.
These four cases, argued together, present questions

of constitutionality, and in the alternative, of the proper construction and application of section 183 of article 56 of the Code, as enacted by the Acts of 1939, chapter 744, requiring payment of personal taxes of residents of Baltimore City as a prerequisite to registration of motor vehicles, and the issue of registration markers for them. The first three appeals are from decisions that the statute is unconstitutional because of a deficient title, and from the consequent awards of writs of mandamus to compel registration and issue of markers applied for, without exaction of taxes demanded; and the fourth appeal is from a declaratory judgment upholding the constitutionality of the statute, determining that the taxes become due and owing from and after January 1st of the year for which they are levied, and requiring the Commissioner of Motor Vehicles to refuse registration for the year 1940 unless the taxes for that year have been previously paid.

Motor vehicles in Maryland are licensed from March 31st of one calendar year to March 31st of the next; and registration and the issue of number plates for each vehicle owned on that date must be procured on or before then, for continued operation without interruption. And the system for imposition and collection of taxes on personal property in Baltimore City provides for an assessment to owners on October 1st, and an ordinance making the levy in the following November. "The taxes levied under said ordinance in the month of November in each year shall be the taxes to be collected for the fiscal year next ensuing after the said month of November, and shall be due and may be paid to the City Collector on or after the first day of January next ensuing. The taxes included in said levy on real estate or chattels real and on all forms of personal property * * * shall be in arrears on the first day of July next ensuing the date of their levy, and the taxes on all forms of property after they become in arrears as aforesaid shall bear interest at the rate of six per centum per annum." Baltimore City Charter, sec. 51. And see Code (1935

Suppl.), art. 81, sec. 48. A discount of one per cent. is allowed on payments made in January and for later payments in diminishing percentages, until one-quarter of one per cent. is allowed for payments in May, and collection may be enforced after July 1st.

The Act of 1939, chapter 744, is intended to supersede statutes of similar requirements. By section 183 of article 56 of the Code, as it stood before 1939, under the Acts of 1927, chapter 707, and 1929, chapter 407, the Commissioner was directed to refuse to issue any plate or marker, certificate of registration or title, "unless all taxes due and in arrears on the motor vehicle * * * have been paid provided each motor vehicle is separately assessed apart from the assessment of any other motor vehicle or kind or class of assessable property and provided the tax to be levied on such motor vehicle is permitted except in Baltimore City to be paid separate and apart from the payment of all other taxes." It was made mandatory upon County Commissioners to provide for separate assessments and separate tax bills. Sections with similar requirements were numbered as section 184, applying to Queen Anne's County, 184A, to Anne Arundel County, 184B, to nineteen cities or towns in various parts of the state, and 184C, to cities and towns in Allegany County. In all these sections the payments required to be made as prerequisities to registration were those of taxes "due and in arrears." The statute of 1939, chapter 744, by its terms repeals and re-enacts section 183 with amendments, and repeals without re-enacting sections 184 to 184C, but enacting in the place of all of them a new section 184. The phraseology of the new section 183 is changed in only one respect, namely, taxes "due and owing" are required to be paid, instead of taxes "due and in arrears;" and the same change is made in the new section 184. The date of effectiveness of the statute is necessarily brought forward.

The first question argued, and the only one raised in the last appeal of the four, is whether the two expressions, "due and owing," and "due and in arrears," are to be

given the same meaning, so that the taxes required to be paid before registration are still those which have become due and in arrears on July 1st, and an applicant for the registration in March would still be entitled to it if he had paid his taxes for the previous year, or whether "due and owing" is the equivalent of due and payable under the Charter and the Code, and marks a change in the law. The judges below agreed that the adoption of "due and owing" in the amended sections made such a change; that taxes for the current calendar year are due and owing from and after January 1st, and by the terms of the statute must now be paid before registration for 1940. And this court agrees.

The argument to the contrary is, principally, that while, as the Charter has expressly enacted, the taxes are due from and after January 1st, they cannot be considered as owing until interest begins to run, and they are enforceable under the law, that is, on July 1st. In other words, it is that the taxes are not owing until payment is required rather than optional. The word "due" alone seems to the court to import a present obligation here. "Statutes generally fix the time when taxes become due and also the time when they become delinquent." *Cooley, Taxation*, sec. 1246. The Supreme Court of the United States has held that the words "due and owing" in the Bankruptcy Act rendered taxes assessed prior to an adjudication entitled to a preference, although they were not collectible until after the adjudication. *New Jersey v. Anderson*, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284. And see *Rumley v. United States*, 293 Fed. 532; *United States v. State Bank*, 6 Pet. 29, 8 L. Ed. 308. And the change of expression by the Legislature, from "due and in arrears" to "due and owing," would of itself seem to indicate that a difference in effect was sought. Such would be a natural inference of the legislators, and their understanding and intention determine the meaning of their enactment. *Duncan v. Graham*, 155 Md. 507, 510, 142 A. 593; *Porcelain Enameling Co. v. Jeffrey Co.*, 177 Md. 677, 11 A. 2nd

451. The taxes are owing, of course, when there exists an obligation for their payment. In a suit in assumpsit by the city for real and personal taxes, the court in *Dugan v. Mayor and City Council,* 1 G. & J. 499, expressed the opinion that the imposition and assessment of a tax created a legal obligation to pay it. "The tax for which this suit was brought was imposed by virtue of that act, the imposition and assessment of which created the legal obligation to pay, on which the law raised an implied assumpsit." But there was no question in that case of a time allowance before enforcement; the suit was entered after the year of the taxation. And a similar holding was that of *Gordon v. Mayor & City Council,* 5 Gill. 231, 242. In *Baltimore C. & A. Ry. Co. v. Commrs. of Wicomico County,* 93 Md. 113, 129, 48 A. 853, however, the court emphasized the fact that it was the imposition and assessment which created the obligation.

An owner of property in the city on October 1st holds it from that time subject to the exaction of a proportionate contribution to the expenses of government during the next calendar year. "The liability for taxes is an incident to property, and essential to the support of the government." *Bonaparte v. State,* 63 Md. 465, 471. It is a liability undetermined only in amount. The assessment and levy determine that, and by January 1st there is a liability definitely fixed, and unescapable, and payment from and after that date is prepared for and expected. Section 53 of the Charter provides that the City Collector shall complete the tax bills for the coming year, "and shall have them ready for payment by the taxpayers on the first day of January next ensuing said levy." The inducements to early payment, the penalties for late payments, and other enforcement measures, all belong to collection, which is to be regarded separately, and as distinct from the imposition of the tax. *Gautier v. Ditmar,* 204 N. Y. 20, 26, 97 N. E. 464; *Dunn v. Harris,* 144 Ga. 157, 162, 86 S. E. 556. Whether liability may be said exactly to date from the previous October 1st need not be considered; when the tax-payer's share is reduced

to a definite amount, and made ready for payment, there is nothing lacking to a complete obligation. The fact that time is allowed by law for the payment, and enforcement delayed until July 1st, does not suspend the existence of this fixed obligation for six months. "It [taxation] consists of two distinct processes—the one relating to the levying or imposition of the taxes on persons or property; the other the collection of the taxes levied. The first is constituted of the provisions of law which determine or work out the determination of the persons or property to be taxed, the sum or sums to be thus raised, the rate thereof, and the time and manner of levying and receiving and collecting the taxes. It definitely and conclusively establishes the sum to be paid by each person taxed, or to be borne by each property specifically assessed, and creates a fixed and certain demand in favor of the state or a subordinate governmental agency, and a definite and positive obligation on the part of those taxed, and prescribes the manner of its voluntary or enforced fulfillment." *Gautier v. Ditman*, 204 N. Y. 20, 26, 97 N. E. 464, 467.

Liens for taxes on real property date from the time of levy. Code, art. 81, sec. 56. The provision that when, after assessment of it, personal property is removed at any time before collection of the tax on it, the collector may pursue it, assumes a liability for the taxes from the time of assessment. Code, art. 81, sec. 69. And the periods of limitations on collection of county and city taxes date from the levy, or the time the taxes become due. Code Supp. art. 81, secs. 93 and 151. All these provisions seem to suppose an obligation from and after the levy, or the time when, as the Charter section declares, the taxes on all kinds of property are due and may be paid. And the same conception seems to find expression in section 48 of article 81 of the Code, enacted in 1929, chapter 226, and 1931, chapter 500, providing that state taxes, generally payable on and after the first day of January of the year for which they are levied, shall, in counties or cities which have elected to take the first

day of January as the date of finality in assessments, "be due and payable on and after the first day of April of such calendar year, and shall be overdue and in arrears on the first day of the succeeding October," after which they shall bear interest until paid. If not paid when "due and payable," then on the specified date they become overdue. And an overdue payment ordinarily means one on an obligation previously accrued.

In the last of the four cases appealed, that of *Elgin, Commissioner, v. Mayor & City Council,* the trial court, as stated, held the expression "due and owing" to refer to January 1st as the date of the obligation, and that payment must be made on or before March 31st, 1940, of taxes for that year; and as this court concurs in that conclusion the judgment must be affirmed.

The limit of time for the payment having thus been advanced by the provisions of the new section 183, and a similar change having been made by the new section 184, does the title of the enactment, which does not specifically mention the change, comply with the constitutional requirement that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." Const. art. 3, sec. 29. The title is: "An Act to repeal and re-enact with amendments Section 183 of Article 56 of the Annotated Code of Maryland (1935 Supplement), title 'Licenses,' sub-title 'Motor Vehicles,' sub-heading 'Fees for Registration of Motor Vehicles,' to repeal Sections 184 to 184C of said Article, Section 184B having been amended by Chapters 85 and 102 of the Acts of 1936 (Special Session) and Chapters 159, 217 and 378 of the Acts of 1937, and to enact in lieu thereof a new section to be known as Section 184, for the purpose of eliminating duplicate provisions and consolidating the laws providing for the payment of taxes levied upon motor vehicles in Baltimore City and the several Counties and in certain incorporated towns of the State before markers, certificates of registration, or titles for motor

vehicles may be issued, and including certain other incorporated towns within the provisions of said sections."

The inquiry must be confined to the sufficiency of this title for enactment of section 183, from which the suits arise, for if it should be sufficient for enactment of that section, it could not be objected to in these suits, even if it should be insufficient for the remaining section, 184. *Worcester County Commrs. v. School Commissioners,* 113 Md. 305, 309, 77 A. 605; *Stiefel v. Maryland Institute,* 61 Md. 144, 148. And an announcement in a title merely that a given section of the law is repealed and re-enacted with amendments, as in this instance, is regularly held sufficient. *Todd v. Frostburg,* 141 Md. 693, 694, 119 A. 696; *Baltimore v. Fuget,* 164 Md. 335, 346, 165 A. 618; *Campbell v. Campbell,* 174 Md. 229, 233, 198 A. 414. But the statement of purpose in the latter part of the title has been thought to be restrictive, and misleading in effect, because negativing by omission any such change as that of the date for payment. *Board of Education v. Wheat,* 174 Md. 314, 199 A. 628; *Buck Glass Co. v. Gordy,* 170 Md. 685, 688, 185 A. 886. There is evident room for a difference of opinion on this objection, as there is so often on the sufficiency of titles to other statutes.

It is, in the first place, questionable whether the latter part of the title refers to section 183; and if it does, and that section, too, is to be considered amended to produce conformity with section 184, for the sake of a harmonious system within the state, the amendment made seems to this court a detail of the process of which the title gives a sufficient description, according to previous decisions of the court. *Ruehl v. State,* 130 Md. 188, 194, 100 A. 75.

The Constitution requires only that the subject of the statute be described in its title, not that every change under that subject be described. The title now in question does announce that the enactment deals with motor vehicle licenses, and with the laws providing for the payment of taxes on motor vehicles before markers, certificates of registration or titles for them may be issued, and that duplicate provisions are to be eliminated, and

the laws consolidated, and announces that this is to be done with amendments of the previous laws. Such a broad statement, in the opinion of the court, is sufficient to give warning of such a change as that by the adoption of a new uniform date for the payment of the taxes. It does not appear so restrictive of the whole title and misleading in that respect as to justify holding that the practical purpose of the Constitution is evaded. *Browne v. Baltimore,* 163 Md. 212, 219, 161 A. 24; *Zukowski v. State,* 167 Md. 549, 554, 175 A. 595; *Toomey v. Shipley,* 172 Md. 463, 469, 192 A. 288. "For testing conformity of a title to this constitutional requirement, there is enjoined upon the courts a disposition to uphold rather than to defeat the enactment." *Board of Education v. Wheat,* 174 Md. 314, 318, 199 A. 628, 630.

Two further objections on constitutional grounds are made. It was found by the court below that it had been the practice of city officials in recent years to assess taxes on motor vehicles owned by individuals separate and apart from those on their other personal property, and receive payment of the taxes on them separately, and it is objected that this is not done with respect to taxes of corporations, and that there is a resulting discrimination against the individual owners because to them alone section 183 applies. But apart from any other answers, it is sufficient to point out that legislative permission to receive the separate payments from any owners is expressly denied to Baltimore City, and the objection to it, when made, could not be leveled against the statute. The law forbids the practice complained of, and the objection is against a mistaken, unauthorized, official practice. The objection is not well founded.

A still further objection made on constitutional grounds is that the requirement of payment of the taxes on all personal property of former owners, including those on the vehicles, deprives the present owners of their property without due process of law. This objection is answered to an extent by the discussion in *Grossfeld v. Baughman,* 148 Md. 330, 129 A. 370, a case on the

similar requirement under the Act of 1924, chapter 412. The requirement is, in effect, only that, as a condition to registration and other service, taxes on the vehicles shall have been paid. Such is the end and aim of the legislation. The hardship, if any, results from the practical difficulty in a new owner's procuring that taxes of a past owner shall have been paid before he buys a car, or before applying for a new registration for it. He is not, of course, compelled to buy a car until the fact of previous payment is made clear to him, and the burden may be said to fall on the seller rather than on the buyer, for the seller can be made to clear his car, so to speak. Wherever the burden falls, the difficulty is merely a practical one, which can be met, and not an imposition without due process of law in respect to it. For transfers of real property, which is subject to a lien for unpaid taxes, (Code, Art. 81, sec. 56), parties have worked out a practice which secures the purchaser against loss for non-payment of the taxes due; and the situation of a buyer of a motor vehicle applying for new registration is analogous. In *Baltimore v. Fine,* 148 Md. 324, 129A. 356, the seller was required to pay taxes in arrears on his personal property, and on all his personal property, in order to sell a motor vehicle included in it. The decision in that case, and that in *Grossfeld v. Baughman, supra,* uphold the requirement. And it is not entirely without precedent. Under an Act of 1874, chapter 483, Code of 1888, art. 81, sec. 64, when property was sold by a ministerial officer under judicial process or otherwise, all taxes of the person who owned the property, not only those on the property sold, but all taxes on all kinds of property, were required to be paid first. See *Degner v. Baltimore,* 74 Md. 144, 146, 21 A. 697. An Act of 1892, ch. 518, restricted the requirement to taxes on the property sold. Code of 1924, art. 81, sec. 74; *Parlett v. Dugan,* 85 Md. 407, 413, 37 A. 36.

On the first of the four appeals, in the case of Mayor and City Council v. Perrin, the only question has been that of the constitutional sufficiency of the title of the

statute, if the change in the law discussed has been made; and as the conclusion of this court, differing from that of the court below, is that the title should be held sufficient, the order for the writ of mandamus in that case must be reversed.

The appeals in the cases of the Talbott Motor Company, and Redmond have raised questions of construction and application of the statute if constitutional.

The Talbott Motor Company, on December 13th, 1939, bought a motor vehicle from a Dr. John N. Clift, of Baltimore City, after the car had been assessed to Dr. Clift for taxation for the year 1940. An application for a new certificate of title was refused by the Commissioner because Dr. Clift had not paid the tax on the car for 1940, and had not paid taxes on his other personal property, such as household furniture, for the year 1939. Dr. Clift had paid the tax on the car for 1939, without paying his other personal taxes, as the car had been assessed separately. A writ of mandamus was issued to compel the new registration notwithstanding these facts. Although the statute denies to the city permission to receive the separate payment, the whole expressed object of the law is that taxes on motor vehicles shall be paid, and if actually paid on the one item, there would seem to be no reason for holding them unpaid to that extent. Therefore, we conclude that a second payment of taxes on the car for 1939 could not be required. But the taxes for 1940 must be shown to have been paid, or must now be paid, as a condition to the registration, even though included in the taxes on all Dr. Clift's personal property. The hardship on the present applicant should have been guarded against at the time of the purchase from Dr. Clift. Because of the failure to show payment of the 1940 taxes then, the court concludes that the order for the writ of mandamus to the Commissioner was erroneously issued in this second case, and must be reversed.

Redmond and wife, appellees on the third appeal, after January 1st, 1940, purchased a car from a dealer who, in turn, had purchased it from a taxable individual owner

in the city before that date, but after October 1st, when the assessment was made up. The car had been separately assessed to the former individual owner, and he had paid the taxes on it for the year 1940, and earlier years, but had not paid his taxes on his household furniture for 1939 or 1940; and a new registration was refused Redmond and wife because of that first owner's failure to pay those other taxes. What has been said in the case of the Talbott Motor Company's appeal answers the question raised. The whole expressed object of the statute, the payment of the taxes on the car, rightly or wrongly, had been accomplished, and there would be no justification for requiring payment of the former owner's taxes on his other personal property now. The writ of mandamus was therefore properly issued in this case, and the order for it must be affirmed.

> *No. 34—Order in Mayor & City Council v. Perrin reversed, with costs.*
> *No. 35—Order in Same v. Talbott Motor Co. reversed, with costs.*
> *No. 36—Order in Same v. Redmond affirmed, with costs.*
> *No. 37—Judgment in Elgin v. Mayor and City Council affirmed, with costs.*

PARKE, J., filed a dissenting opinion as follows.

The writer of this dissent fully concurs in what has been said in the opinion filed for the court by Chief Judge Bond, except in reference to the appeal in the case of James Redmond and wife. In the view here entertained the conclusion of the court that the writ of mandamus should issue in that case seems unsound.

Redmond and his wife bought an automobile of a dealer to whom it had been sold by H, who had the title and was its owner before October 1st, 1939. The automobile had been separately valued and assessed to H, as had his other tangible personal property, which consisted of household furniture. The city rendered H separate bills for the two

forms of tangible personal property. H paid all the taxes due and owing upon the valuation and assessment of his automobile for taxation at the rate levied uniformly upon all his tangible personal property, but he did not pay the residue of his taxes, which remained due and owing on account of the valuation and assessment of his other personal property for the years 1939 and 1940. It is because of this default of H that the Motor Vehicle Commissioner refused to issue a new certificate of title to Redmond and wife.

The statutory authority and direction to the Commissioner of Motor Vehicles to refuse to issue or transfer any plate, marker or certificate of registration of title for any motor vehicle, unless he is satisfied that all taxes due and owing thereon have been paid, originated with chapter 412 of the Acts of 1924, and applied exclusively to the City of Baltimore. It was held in *Baltimore v. Fine,* 1925, 148 Md. 324, 325, 129 A. 356, that the *ad valorem* tax levied upon the valuation and assessment of an automobile was not made by the statute a separate and distinct tax, but that this charge and that based upon the valuation and assessment of the person's other tangible personal property constituted but a single yearly tax demand, which the taxpayer could not compel the collector of taxes to receive in part with reference to any particular item of tangible personal property included in the valuation and assessment. Nor did the subsequent amendments of this statute, so that its mandate was extended to the counties of the state, and some of the municipalities within the counties of the state, change the rule with reference to the City of Baltimore. It is quite true that by the provisions of the later statutes the respective county commissioners of the several counties of the state are commanded to provide separate valuations, assessments, and tax bills for every motor vehicle subject to taxation in every county, and that the tax levied and thus ascertained is "permitted except in Baltimore City to be paid separate and apart from the payment of all other taxes." Section 183 of article 56 of

Annotated Code (1935 Supplement). The legislative exception of Baltimore City is an express denial of any right of the taxpayer of Baltimore City to pay any amount less than the whole of the amount of the tax for a year levied upon his tangible personal property. In this manner, the General Assembly of Maryland declared its intention that there should be preserved to Baltimore City the benefit of compelling the whole *ad valorem* tax on tangible personal property, for every year due and owing, to be paid as a condition precedent to the issuance or transfer of the certificate of registration or title, plate or marker for any motor vehicle owned in Baltimore City. If the taxpayer paid anything less than the total of the yearly tax on the *ad valorem* value of all his tangible personal property, the collector acted in violation of the statute, and the taxpayer, at most, would be entitled to nothing more than a credit in the entire amount due.

The custom of rendering separate bills for the amount of taxes based upon the valuation and assessment of motor vehicles, and for the amount of taxes based upon the valuation and assessment of other tangible personal property, cannot nullify the explicit legislation which governs the subject matter. The endorsement on each bill of the notation: "Current and arrears tax bills for tangible personal property must be paid before the department will certify applications for tax or titles," demonstrates that there was no intention to give to the payment of either separate bill any other effect than a payment on account.

Nor, it is submitted, is this exception of the City of Baltimore an unconstitutional provision. The argument that the mentioned differences under the statute between the owner of a motor vehicle in Baltimore City and in a county deprive the owners of motor vehicles in Baltimore City of the equal protection of the law and of their property without due process of law was urged in denial of the constitutionality of the original statute (Acts of 1924, ch. 412), when it applied only to the City of Balti-

118

more.   In the unanimous opinion of this court in the appeal of *Grossfeld v. Baughman,* 1925, 148 Md. 330, 129 A. 370, these objections were rejected and the statute held constitutional.   By that case it was held that the present statutory method adopted by the General Assembly of Maryland to enforce the payment of taxes on tangible personal property in Baltimore City as a prerequisite to the issue or transfer of any plate or marker, certificate of registration or title for any motor vehicle owned by the taxpayer is not a deprivation of property without due process of law.   148 Md. 334, 335, 129 A. 370.   And it was further determined that, without creating either inequality or discrimination in a constitutional sense, a general method for the collection of a tax within a distinct political division, such as the City of Baltimore, may be prescribed by the Legislature, although this method may differ from the method in force in the other political divisions of the State.   148 Md. pages 336-338, 129 A. 370.   *Stevens v. State,* 89 Md. 669, 674, 43 A. 929; *Mt Vernon Cotton Duck Co. v. Frankfort Glass Ins. Co.,* 111 Md. 561, 568, 569, 75 A. 105; *Miller v. Wicomico County,* 107 Md. 438, 69 A. 118; *State v. Shapiro,* 131 Md. 168, 171-173, 101 A. 703; *Dahler v. Washington Suburban Sanitary Commn.,* 133 Md. 644, 649, 106 A. 10; *Sweeten v. State,* 122 Md. 634, 641, 90 A. 180.

The substantial effect of the later amendments made with reference to the City of Baltimore and the counties, which are all political units of co-ordinate rank, was to leave the owners of motor vehicles in Baltimore City in the same situation as that created by the terms of the original act, and to bring the owners of motor vehicles in the several counties within the purview of the legislation, to the extent of the pre-payment of the tax due and owing on the assessed value of the particular motor vehicle.   Thus, the objections urged on constitutional grounds to the original act are less forceful when directed against the statute now assailed, and the decision in *Grossfeld v. Baughman, supra,* is of controlling effect on the facts of the record now at bar.

As was said in *Grossfeld v. Baughman, supra,* 148 Md. at page 338, 129 A. at page 373: "On precedent and principle, the provisions of the statute in question are not open to any constitutional objection. The classification of motor vehicles into two great natural divisions is not unreasonable, and the penalties imposed for the failure to pay taxes on the designated class of non-commercial motor vehicles cannot be said to be so arbitrary or unfair as to fall under the condemnation of law. It may well be that the Legislature has a practical condition to deal with in Baltimore City in the collection of taxes, on this form of property that could best be met by the enactment of a local statute. But the validity of an enactment does not depend upon its wisdom, and the court will support every law with the presumption of its reasonableness whenever its provisions will permit."

OFFUTT, J., filed a dissenting opinion as follows.

Measured by its effect on the parties to the record, the decision of these cases is of little importance. Measured by the principles involved it is quite important. That the Baltimore City automobile owner must pay taxes on all his assessable property which are payable, but not in arrears, before he can lawfully operate his automobile on the public highways of the state, may be inconvenient to him but is not of vital importance, since he must in any event pay them some time. But whether he is to be deprived of the protection of the Constitution of the State is important, not only to him, but to all other citizens of the state, for if it does not protect him, then it protects nobody and is nothing more than a rhetorical admonition. So the question here is not so much how these cases are to be decided as what is to be done with the Constitution.

The particular question is presented by an attack on the validity of chapter 744 of the Acts of 1939, as construed by the administrative officials of Baltimore City. As the law stood prior to that act, an automobile owner residing in Baltimore City could neither sell nor operate

120

it in this state until he had paid all taxes owed by him which were due "and in arrears." An automobile owner residing in any other part of the State could sell his car and operate it if there were no taxes due and in arrears on the particular automobile.

That law was found in section 183 of article 56 of the Annotated Code of Maryland (1935 Supplement), title "Licenses," sub-title "Motor Vehicles," sub-heading "Fees for Registration of Motor Vehicles," sections 184 to 184C of said article, section 184B having been amended by chapters 85 and 102 of the Acts of 1936 (Special Session) and chapters 159, 217 and 378 of the Acts of 1937. The purpose of chapter 744, as set forth in its title, was "to repeal and re-enact with amendments Section 183 of Article 56 of the Annotated Code of Maryland (1935 Supplement), title 'Licenses,' sub-title 'Motor Vehicles,' sub-heading, 'Fees for Registration of Motor Vehicles,' to repeal Sections 184 to 184C of said Article, Section 184B having been amended by Chapters 85 and 102 of the Acts of 1936 (Special Session) and Chapters 159, 217 and 378 of the Acts of 1937, and to enact in lieu thereof a new section to be known as Section 184, for the purpose of eliminating duplicate provisions and consolidating the laws providing for the payment of taxes levied upon motor vehicles in Baltimore City and the several Counties and in certain incorporated towns of the State before markers, certificates of registration, or titles for motor vehicles may be issued, and including certain other incorporated towns within the provisions of said sections." Section 183, article 56, Code, as amended by chapter 407 of the Acts of 1929, read: "The Commissioner of Motor Vehicles is hereby authorized and directed to refuse to issue or transfer any plate or marker, certificate of registration or title for any motor vehicle unless all taxes due and in arrears on the motor vehicle described in the certificate of registration or title so to be issued or transferred have been paid provided each motor vehicle is separately assessed apart from the assessment on any other motor vehicle or kind or class of assessable

property and provided the tax to be levied on such motor vehicle is permitted except in Baltimore City to be paid separate and apart from the payment of all other taxes. And it shall be mandatory upon the County Commissioners to provide for separate assessments and separate tax bills. * * *" Chapter 744 of the Acts of 1939 substituted for the words "due and in arrears," appearing in the first sentence of section 183, article 56, Code 1935, the words "due and owing," and for the last sentence of that section it substituted the following: "This section shall apply only in the case of taxes becoming due and owing in the year 1939 and thereafter."

Section 184, article 56, Code (1935), applicable only to Queen Anne's County, directed that the Commissioner of Motor Vehicles should issue no plate, marker nor certificate of registration or transfer of any motor vehicle unless "he is satisfied that all taxes due and in arrears thereon have been paid." Section 184C extended the provisions of 183 to incorporated towns in Allegany County. Section 184B, as finally amended by chapter 378 of the Acts of 1937, directed the Commissioner to refuse to issue such markers or certificates "for any motor vehicles owned by a resident of the City of Hagerstown, Funkstown, Hancock, Betterton, Chestertown, Rock Hall, Oakland, Brunswick, City of Frederick, Emmitsburg, Elkton, Federalsburg, Galena, Mountain Lake Park, Cambridge, East New Market, Easton, Oxford or St. Michaels, unless he is satisfied that all municipal taxes due and in arrears on the motor vehicles described in the certificate of registration or title so to be issued or transferred, have been paid, provided each motor vehicle is separately assessed apart from the assessment on any other motor vehicle or kind or class of assessable property, and provided the tax to be levied on such motor vehicle is permitted to be paid separate and apart from the payment of all other taxes, and provided this section shall apply only in case of taxes becoming due and in arrears under the levy of 1937 and thereafter." Section 184, article 56, Code, as amended by chapter 744, Acts of 1939, extended the list of munici-

palities to which the acts should apply as follows: "Brentwood, Hampstead, Betterton, Chestertown, Rock Hall, Oakland, Brunswick, City of Frederick, Emmitsburg, East New Market, Easton, Oxford, St. Michaels, Elkton, Mountain Lake Park, Federalsburg or Galena, or by a resident of any incorporated town or city in Allegany, Carroll, Dorchester, Prince George's or Washington Counties," and then added this new matter: "Nothing in this section, however, shall be construed to prohibit a registered motor vehicle dealer from transferring, assigning or reassigning an assignment of title to any motor vehicle legally repossessed, or taken in trade by said dealer as a partial payment on the purchase of another motor vehicle and the Commissioner of Motor Vehicles shall execute all such applications for transfer, assignment or reassignment of assignment of titles made by a registered motor vehicle dealer provided said dealer has given to the Commissioner of Motor Vehicles proper notice of the receipt of said vehicles as required by Section 180 of this Article when said applications are submitted upon proper forms furnished by the Commissioner."

The "purpose" of chapter 744, Acts of 1939, declared in its title, was the elimination of "duplicate provisions and consolidating the laws providing for the payment of taxes" levied "upon motor vehicles" in Baltimore City, the counties of the State, and in certain incorporated towns of the State.

What the Act actually does is not only to consolidate these laws but to make radical and definite changes in them. For instance, in section 183, by substituting "due and owing" for "in arrears," it prevents an automobile owner residing in Baltimore City from operating his automobile on the public highways of the state unless he pays his taxes six months earlier than he was required under the repealed law to pay them, and again, it exempts second hand dealers from the application of the statute, while under the old law there was no such exemption.

Article III, section 29, Maryland Constitution, provides that "every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; and no law, or section of law, shall be revived or amended by reference to its title or section only * * *."

Few provisions of the State Constitution have given rise to as many quiddities, hair splitting logic, casuistry, and dialectics as this one. On the one hand there is the natural disinclination to override the legislative will by striking down a law passed to meet some real or supposed public need or exigency, and on the other the difficulty of going through, around, or over some constitutional provision which stands in the way without appearing to disturb it. So not unnaturally, notwithstanding the clarity of the constitutional provision, the cases construing and applying it are not all clear and not all consistent.

The purpose of the provision against the amendment of an act by reference to its title or section only was stated in *Davis v. State*, 7 Md. 151, 160, in these words: "The object of this constitutional provision is obvious and highly commendable. A practice had crept into our system of legislation, of engrafting, upon subjects of great public benefit and importance, for local or selfish purposes, foreign and often pernicious matters, and rather than endanger the main subject, or for the purpose of securing new strength for it, members were often induced to sanction and actually vote for such provisions, which if they were offered as independent subjects, would never have received their support. In this way the people of our State, have been frequently inflicted with evil and injurious legislation. Besides, foreign matter has often been stealthily incorporated into a law, during the haste and confusion always incident upon the close of the sessions of all legislative bodies, and it has not unfrequently happened, that in this way the statute books have shown the existence of enactments, that few of the members of the legislature knew anything of before. To remedy such and similar evils, was this provision inserted into the constitution, and we think wisely in-

serted." But in *Annapolis v. State,* 30 Md. 112, 119, the court had so far modified that position as to be able to say that it should not "by a technical interpretation embarrass legislation and encumber laws with long and prolix titles," and accordingly it held in *Dorchester County Commissioners v. Meekins,* 50 Md. 28, 43, that an act entitled "An Act to repeal sections eighty-seven and ninety, of Article ten, of the Code of Public Local Laws, title, 'Dorchester County,' sub-title, 'County Commissioners,' enacted by the Act passed at January Session, eighteen hundred and seventy, chapter four hundred and forty-nine, and all other sections or parts of sections of the Code of Public General Laws, and Public Local Laws, and all other Acts and sections, or parts of Acts or sections of the Acts of the General Assembly of Maryland, inconsistent with the provisions of this Act, and to enact the following in lieu thereof," was valid, and in *State v. Norris,* 70 Md. 91, 94, 16 A. 446, in dealing with the validity of an act entitled "An Act to add a new section to article 30 of the Code of Public General Laws, title 'Crimes and Punishments,' sub-title 'Rivers,' to come in after section one hundred and seventy-one," Judge Alvey, observing that trend, said for the court: "What the title of the act is we have already recited; and it certainly requires a very liberal construction of the constitutional provision to maintain the sufficiency of this title. The objects designed to be attained by the constitutional provision are twofold. The first is to prevent the combination in one act of several distinct and incongruous subjects; and the second is that the legislature and the people of the state may be fairly advised of the real nature of pending legislation. All titles of acts, therefore, should be so framed as to accomplish these objects. But we regret to say that, in practice, a strict observance of the terms of the constitution has not always marked our legislation in this respect. Many acts are passed, and often of great importance, the titles of which are exceedingly deficient in definite and clear description of the subject-matter of the act. But this court

has ever been reluctant to defeat the will of the legislature by declaring such legislation void, if by any construction it could possibly be maintained." But, yielding to the trend, the statute was upheld, and, indeed, after *Second German American Bldg. Assn. v. Newman,* 50 Md. 62, 65, there was nothing else to do. In that case the title read "An Act to amend Article ninety-five of the Code of Public General Laws, by adding an additional section thereto." The subject of the act was usury, but although there was no reference in the title to that subject or to the Code title covering it, the court held that the title "clearly indicated the subject of the law," as though the ordinary citizen would know that article 95 of the Code dealt with usury. And so the court held in *Garrison v. Hill,* 81 Md. 551, 554, 32 A. 191, that the title "An act to add an additional section to article 93 of the Code of Public General Laws of Maryland to come in after section 326 and to be known as section 326A" was sufficient. In *State v. Fox,* 51 Md. 412, 414, it was held that an act which prohibited and punished as a felony the "cutting down of timber and trees in Garrett County," granted municipal charters, amended existing laws, and created new ones, was sufficiently described in the following title: "An Act to add an additional Article to the Code of Public Local Laws to be entitled Garrett County." *Levin v. Hewes,* 118 Md. 624, 628, 86 A. 233; *State v. Schultz Co.,* 83 Md. 58, 60, 34 A. 243; *Crouse v. State,* 130 Md. 364, 100 A. 361; *Kelly v. State,* 139 Md. 204, 207, 114 A. 888; *Dean v. Slacum,* 149 Md. 578, 580, 132 A. 73; *Fout v. Frederick County,* 105 Md. 545, 563, 66 A. 487; *Mt. Vernon Cotton Duck Co. v. Frankfort Glass Ins. Co.,* 111 Md. 561, 75 A. 105, illustrate and exemplify the liberal rule of construction at times applied by the courts in construing that provision. On the other hand, in *Scharf v. Tasker,* 73 Md. 378, 380, 21 A. 56, it was held that an act entitled "An act to provide for the assessment of the unclaimed military lots and tracts of land in Allegany and Garrett counties, and for the collection of state and county taxes

thereon, by selling the delinquent lands, and turning the net proceeds into the state treasury," did not sufficiently describe a provision allowing certain agents of the counties to examine the records of the Land Office free of cost, and remitting fees for prior searches.

In *Whitman v. State*, 80 Md. 410, 416, 31 A. 325, it was held that the title to an act which described it as an act to "regulate" the liquor traffic in Cambridge did not sufficiently describe a provision of the act which dealt with the abolition of the traffic in a larger territory, although in *Mt. Vernon Cotton Duck Co. v. Frankfort Glass Ins. Co., supra,* it was held that the statement of a purpose to regulate child employment in the whole state sufficiently described a purpose to totally prohibit it in only a part of the state. In *Luman v. Hitchens Bros. Co.,* 90 Md. 14, 21, 44 A. 1051, it was held that a title which described the statute as prohibiting railroad and mining companies from selling in Allegany County merchandise to their employees did not describe an act which prohibited such companies from selling merchandise at all in that county. In *Nutwell v. Anne Arundel County,* 110 Md. 667, 73 A. 710, an act was stricken down because the title described it as an act requiring "all owners" of vehicles using the public highways in that county to take out licenses therefor, whereas the act exempted from its scope carts, farm, and milk wagons. In *Painter v. Mattfeldt,* 119 Md. 466, 87 A. 413, 417, chapter 345 of the Acts of 1912 provided a road system for Baltimore County. The title declared the purpose of the act to be to create a road commission, "with full powers to construct and improve a system of improved public roads, highways and bridges in Baltimore County, Maryland; and providing also the ways and means for the construction and improvement thereof by a bond issue of one million five hundred thousand dollars to be a lien upon the assessable property in said county; and repealing chapter 744 of the acts of the General Assembly of Maryland passed at the session of 1910." The act itself provided for the appropriation and expenditure of public

funds in addition to those realized from a sale of the, bonds, and because of that inconsistency the act was stricken down. In that case Judge Burke, with characteristic vigor and incisiveness, emphasized the conflict between law and expediency in this language: "If, then, the courts are to regard the Constitution, and the Constitution is superior to any ordinary act of the legislature, the Constitution, and not such ordinary act, must govern the case to which they both apply. Those, then, who controvert the principle that the Constitution is to be considered in court as the paramount law, are reduced to the necessity of maintaining that courts must close their eyes on the Constitution and see only the law. This doctrine would subvert the very foundation of all written Constitutions. It would declare that an act which, according to the principles and theory of our government, is entirely void is yet, in practice, completely obligatory. It would declare that, if the Legislature shall do what is expressly forbidden, such act, notwithstanding the expressed prohibition, is in reality effectual. It would be giving to the Legislature a practical and real omnipotence with the same breadth which professes to restrict their powers within narrow limits. It is prescribing limits and declaring that those limits may be passed at pleasure." In *County Commissioners of Somerset County v. Pocomoke Bridge Co.*, 109 Md. 1, 71 A. 462, 463, an act entitled "An act to incorporate the Pocomoke Bridge Company" was declared void because the act required the County Commissioners of Somerset and Worcester Counties to make annual payments to the bridge company on account of a bridge over the Pocomoke River. In *United Rys. & Elec. Co. v. Mayor and City Council of Baltimore,* 121 Md. 552, 88 A. 617, a statute was held bad because the title failed to give notice that it in effect amended the charter of the railways company. In *Culp v. Chestertown,* 154 Md. 620, 622, 141 A. 410, 413, a statute was held bad because its title failed to indicate that part of the expense of a proposed street improvement would be assessed against adjoining property owners, and again

128

the court, through Judge Digges, restated the purpose of the constitutional provision, saying: "The purpose of this constitutional provision has been declared to be to prevent separate and incongruous subjects from being contained in one act, and thereby preventing 'log-rolling' legislation; to give the people general notice of the character of the proposed legislation, so they may not be misled; to give all interested an opportunity to appear before the committees of the legislature and be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation and against false and deceptive titles." *Shea v. State*, 148 Md. 256, 129 A. 221; *Baltimore v. Deegan*, 163 Md. 234, 238, 161 A. 282; *State v. King*, 124 Md. 491, 497, 92 A. 1041; *Mayor and City Council v. Williams*, 124 Md. 502, 510, 92 A. 1066; *State v. Cumberland & Pa. R. Co.*, 105 Md. 478, 483, 66 A. 458; *Christmas v. Warfield*, 105 Md. 530, 544, 66 A. 491; further illustrate the conflict between liberality and law, and legislatures and constitutions, as do such later cases as *Board of Education v. Wheat*, 174 Md. 314, 199 A. 628; *Home for Incurables v. Bruff*, 160 Md. 156, 153 A. 403, and *Bevard v. Baughman*, 167 Md. 55, 173 A. 40.

If any principle or rule for the interpretation and construction of that constitutional provision can be said to be established by the cases cited and other cases not cited dealing with it, it is that the title to a statute must not mislead or deceive. Every case which has dealt with the question supports and approves that principle, although its application has at times been forced and artificial.

Turning now to the title of the act in issue here, it states that the act repeals and re-enacts with amendments certain definitely specified statutes, and repeals other definitely specified statutes, and enacts in lieu thereof a new section of the Code, and after that enumeration it states that the purpose of those enactments is to

eliminate duplicate provisions and consolidate the laws
for the payment of taxes "upon motor vehicles" through-
out the state and in certain incorporated towns of the
state.

But when the statute itself is examined it is found that
instead of consolidating existing laws relating to taxes on
motor vehicles, it creates a new method of collecting taxes
on all assessable property in Baltimore City, (2) it
creates a new exemption (section 184) in favor of second
hand dealers, (3) it increases the number of municipal
units to which the old law applied, (4) it advances by six
months the time within which an automobile owner living
in Baltimore City must pay all his taxes before operating
his automobile on a public highway.

To consolidate is to bring together, harmonize, and
synthesize things that are already in existence, and has
no relation to the creation of new and different things.
Duplication means the production of identical repro-
ductions of the same thing, not the production of things
which differ.

When therefore the act made new law different from
the old law, it went beyond the purpose stated in its
title, and was affirmatively misleading and deceptive.
That it did make new law is scarcely open to question.
The old law provided that registration and title cer-
tificates might issue if taxes were payable but unpaid,
if they were not in arrears, the new law provides that
such certificates may not be issued if taxes are payable
but unpaid, even though they are not in arrears; the old
law provided that such certificates should not issue un-
less automobile owners residing in certain specified
municipalities had paid their municipal taxes on the
automobile which were unpaid and in arrears, the new
law provides that such certificates shall not be issued un-
less residents of those municipalities and of other and
different municipalities have paid taxes on the auto-
mobile whether in arrears or not; the old law ap-
plied within its scope to all alike, the new law exempts
from its application in certain cases dealers in second

hand automobiles. So that, under the pretense of consolidating existing statutes as stated in its title, the act creates a new body of law radically different from the old law, and, if the constitutional provision still has vitality, the act is bad and should be set aside.

But apart from that there is another objection to the statute, that it deprives the citizens of Baltimore City of the equal protection of the law, and deprives them of their property without due process of law.

Under the provisions of the statute an automobile owner residing in the counties is entitled to a certificate of registration of title if he has paid the taxes due and payable on the automobile, but a resident of Baltimore City is not entitled to such a certificate unless he has paid all taxes due and payable upon all of his assessable personal property (*Grossfeld v. Baughman,* 148 Md. 330, 129 A. 370; *Baltimore v. Fine,* 148 Md. 324, 129 A. 356), because under the statute the separate assessment of automobiles is mandatory in the counties but not in Baltimore City. Moreover, a second hand dealer of automobiles operating in all the municipalities described in section 184 is exempted from the operation of the act, while private owners are subject to it.

Under the statute an automobile owner residing in the county outside of a municipality may obtain a registration certificate if he pays the state and county taxes on the automobile only, if he resides in one of the municipalities named in section 184 he may obtain such certificate by paying the state, county, and municipal tax on the automobile only, if he lives in Baltimore City to obtain such a certificate he must not only pay the state and municipal tax on the automobile, but on all his assessable personal property as well.

The public highways of the state are the property of the State (*Elliott on Roads and Streets,* secs. 25, 511), maintained by public funds for the common use of its people. The privilege of using them for the purpose for which they are established and maintained should be available to all alike, upon the same and equal conditions.

To permit a resident of Baltimore County to operate an automobile on the public highways if he has paid all taxes due and payable on the automobile only, and to deny that privilege to an inhabitant of Baltimore City unless he has paid all taxes due and payable on all of his assessable personal property, is an arbitrary, irrational, and unjust discrimination, just as it is arbitrary and unreasonable to permit a second hand dealer to transfer title to an automobile on which the taxes are unpaid, but to deny that privilege to a private owner.

Automobile owners and users throughout the state constitute a single indivisible class, and while rules regulating the operation of automobiles and registration fees may properly vary with the speed, power, weight, size and character of different types of motor vehicles, such rules and fees must within the classification and subclassification be uniform. The rules of the road, rules affecting equipment, and speed, must and do apply equally to all persons operating automobiles within the state, wherever they reside, and upon the same principle the privilege of using the public highways of the state should be available to all upon identical conditions. *Kelman v. Ryan*, 163 Md. 19, 163 A. 593; *Blaustein v. Levin*, 176 Md. 423, 4 A. 2nd 861; *Dasch v. Jackson*, 170 Md. 251, 183 A. 534; *Raney v. Montgomery County*, 170 Md. 183, 183 A. 548; *Luman v. Hitchens, Bros. Co., supra; Parlett Co-operative v. Tidewater Lines*, 164 Md. 405, 165 A. 313; *State v. Potomac Valley Coal Co.*, 116 Md. 380, 81 A. 686; *State, use of Emerson v. Poe*, 171 Md. 584, 190 A. 231. There is no apparent reason for subjecting the automobile owner residing in Baltimore City to more onerous and exacting burdens than those imposed on other residents of the state for the same privilege.

For these reasons, I am unable to agree with the conclusion that chapter 744 of the Acts of 1939 is a valid enactment.